**United States District Court**
**District of New Mexico**

| | |
|---|---|
| **PUBLIC INTEREST LEGAL FOUNDATION, INC.** | |
| *Plaintiff*, | |
| *v.* | Case No. _____ |
| **MAGGIE TOULOUSE OLIVER,** in her official capacity as New Mexico Secretary of State | |
| *Defendant*. | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Public Interest Legal Foundation, Inc. ("Foundation") brings this action for violations of Section 8 of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20507.

**JURISDICTION AND VENUE**

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because the action arises under the laws of the United States. This Court also has jurisdiction under 52 U.S.C. § 20510(b), because the action seeks injunctive and declaratory relief under the NVRA. This Court may also grant declaratory relief under 28 U.S.C. § 2201.

2.     Venue in this Court is proper under 28 U.S.C. § 1391(b)(1), because the Defendant resides in this district, and under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this district.

**PARTIES**

3.     The Public Interest Legal Foundation, Inc. is a non-partisan, 501(c)(3) public interest organization incorporated and based in Alexandria, Virginia. The Foundation promotes

1

the integrity of elections nationwide through research, education, remedial programs, and

litigation. The Foundation regularly utilizes the NVRA and other laws that require government

records be made available to the public. Using records and data compiled through these open

records laws, the Foundation analyzes the programs and activities of state and local election

officials to determine whether lawful efforts are being made to keep voter rolls current and

accurate in accordance with federal and state law. The Foundation also uses records and data to

produce and disseminate reports, articles, blog and social media posts, and newsletters in order to

advance the public education aspect of its organizational mission.

4.      Defendant Maggie Toulouse Oliver ("Secretary") is the Secretary of State for the

State of New Mexico and "is the chief election officer of the state." NMSA § 1-2-1(A).

5.      The Secretary is sued in her official capacity only.

**BACKGROUND**

6.      Under New Mexico law, the Secretary "shall furnish voter data, mailing labels or

special voter lists" upon request. NMSA § 1-4-5.5(A).

7.      This data is commonly referred to as SERVIS Data because it is maintained in

New Mexico's State Elections Registration and Voting Integrity System.

8.      The Secretary requires requests for SERVIS Data to be made using the "Voter

Data Request Form," the most recent version of which is available at the following address:

https://www.sos.nm.gov/voting-and-elections/data-and-maps/voter-data-information/ (last

accessed Feb. 24, 2023). *See also* NMSA § 1-4-5.5(C)-(D).

9.      The term "voter data" means "selected information derived from the voter file,"

NMSA § 1-4-5.5(E)(5), such as the name, address, and year of birth for each registered voter.

10.     The Secretary charges fees to receive "voter data" based on the following

schedule:

**Fees for Data:**

The fees for the various media on which SERVIS data can be requested are as follows:

| Type of Service or Document | Cost | Other |
|---|---|---|
| Electronic Format | $4.00 per 1,000 records with voting history | Unsorted |
| Electronic Format | $3.00 per 1,000 records without voting history | Unsorted |
| Printed List | $5.00 per 1,000 records | As Requested |
| Labels | $20.00 per 1000 records | As Requested |

There will be a $15.00 Setup Fee on all voter data information requests.

https://www.sos.nm.gov/voting-and-elections/data-and-maps/voter-data-information/ (last

accessed Feb. 24, 2023) (hereafter, "Data Fees").

11.     A requestor must pay the Data Fees each time she requests any "voter data."

12.     For example, pursuant to the Data Fees, a requestor must pay more than $5,000 to

receive, in electronic format, a copy of the statewide list of New Mexico's registered voters with

voting histories.

13.     New Mexico law provides that "voter data, mailing labels and special voter lists

shall be used for governmental or election and election campaign purposes only and shall not be

made available or used for unlawful purposes." NMSA § 1-4-5.5(C).

14.     A "governmental" purpose is any "noncommercial purpose[] relating in any way

to the structure, operation or decision-making of a federal, state or local government[.]" NMSA §

1-4-5.5(E)(2).

***The NVRA's Purposes***

15.     The NVRA's purposes are the following:

(1) to establish procedures that will increase the number of eligible citizens who
register to vote in elections for Federal office;

(2) to make it possible for Federal, State, and local governments to implement this chapter in a manner that enhances the participation of eligible citizens as voters in elections for Federal office;

(3) to protect the integrity of the electoral process; and

(4) to ensure that accurate and current voter registration rolls are maintained.

52 U.S.C. § 20501(b).

*Federal and State Voter List Maintenance Requirements*

16.     Federal and state law require New Mexico to perform activities designed to keep the eligible voter list accurate and current, activities which include adding new registration records and removing ineligible registration records.

17.     The NVRA mandates certain circumstantial procedures to "ensure that any eligible applicant is registered to vote in an election[.]" *See* 52 U.S.C § 20507(a)(1)-(2).

18.     The NVRA also requires each state to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of … the death of the registrant … or a change in the residence of the registrant[.]" 52 U.S.C. § 20507(a)(4)(A)-(B).

19.     New Mexico law provides for the addition of new registrants: "If a qualified resident submits a voter registration certificate in accordance with the provisions of [the relevant statutes] the qualified resident shall … become a voter upon the qualified resident's eighteenth birthday." NMSA § 1-4-2(B)(1).

20.     New Mexico law also requires cancellation of voter registration records for the following reasons: death, felony conviction, upon request, and at the direction of the board of registration. NMSA § 1-4-24(A)-(D).

*The NVRA's Public Disclosure Provision*

21.     The NVRA also contains a public records provision. 52 U.S.C. § 20507(i).

22.     The NVRA provides, in relevant part, "Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters[.]" 52 U.S.C. § 20507(i)(1) (hereafter, the "Public Disclosure Provision").

23.     The Public Disclosure Provision "embodies Congress's conviction that Americans who are eligible under law to vote have every right to exercise their franchise, a right that must not be sacrificed to administrative chicanery, oversights, or inefficiencies." *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 334-35 (4th Cir. 2012).

24.     The Public Disclosure Provision is designed to "ensure that election officials are fulfilling their list maintenance duties" and is "available to any member of the public." *Bellitto v. Snipes*, No. 16-cv-61474, 2018 U.S. Dist. LEXIS 103617, at *12 (S.D. Fla. Mar. 30, 2018).

25.     The Public Disclosure Provision "convey[s] Congress's intention that the public should be monitoring the state of the voter rolls and the adequacy of election officials' list maintenance programs. Accordingly, election officials must provide full public access to all records related to their list maintenance activities, including their voter rolls." *Id*. at *12-13.

26.     SERVIS Data is within the scope of the NVRA's Public Disclosure Provision.

27.     By its text, the Public Disclosure Provision permits states to charge requestors for "photocopying at a reasonable cost." 52 U.S.C. § 20507(i)(1).

***The Foundation's Efforts to Obtain SERVIS Data***

28.     On October 11, 2022, the Foundation requested the following records from the Secretary pursuant to the NVRA's Public Disclosure Provision:

1.     Copies of any procedural guide or employee training manual containing instructions for processing and completing a New Mexico Voter Data Request

under 1.10.35 NMAC Rule et seq. for voter information records with voting history in electronic format as outlined on the NMSOS website;

2.      Records showing costs covered under the "$15.00 Setup Fee" for SERVIS-related requests;

3.      A copy of the current and accurate listing of registered voter counts by county as was originally offered on the NMSOS website (the hyperlink to this information on the SERVIS webpage is broken as of today); and,

4.      A copy of the most current listing of SERVIS data (active and inactive/suspense) in electronic form with voting history. SERVIS data (i.e., the voter roll) is public data under the NVRA.  The NVRA allows states to charge requestors for only the "reasonable cost" of "photocopying." 52 U.S.C. § 20507(i)(1). SERVIS data that can be produced electronically therefore must be produced at no cost to the requestor.

Exhibit A at 1-2 ("Request").

29.      The record described in Request No. 4 is commonly known as the Voter Roll.

30.      The Foundation's Request further provided, "To better defray reproduction costs borne by your office in processing the request, a representative for PILF will appear on November 1, 2022, to provide necessary storage media resources and applicable hardware to complete the data transfer." Exhibit A at 2.

31.      The Secretary's office did not respond to the Request beyond sending an automated message stating that an email was received by the elections@sos.nm.gov address.

32.      On October 25, 2022, the Foundation sent a follow-up email to the Secretary, asking for an acknowledgment of the Request and confirmation that a staff member would be available on November 1, 2022 to assist with production of the requested records. Like before, the Foundation received only an automated message in response.

33.      As indicated in the Request, on November 1, 2022, a Foundation representative visited the Secretary's office, where he provided a copy of the Request to the Secretary's receptionist.

34.     The Secretary's staff member provided the Foundation's representative with a copy of the Data Fees, which indicated that the cost to receive the SERVIS Data portion of the request, *i.e.*, the Voter Roll, was approximately $5,000.

35.     The Foundation's representative verbally reiterated to the Secretary's staff member that the Foundation's Request was made pursuant to the NVRA, which permits states to charge requestors only the "reasonable cost[s]" of "photocopying," 52 U.S.C. § 20507(i)(1), or, in this case, the cost of reproducing the digital records.

36.     To reduce or eliminate digital reproduction costs, the Foundation's representative offered to provide all necessary hardware to securely transfer SERVIS Data, including a DVD writer, 100 blank DVD-Rs, and a 64-gigabyte flash drive. All storage media were in original packaging.

37.     The Secretary's staff member then returned to her office, presumably to discuss the Foundation's offer with other staff members. When she returned, she explained to the Foundation's representative that New Mexico statutes require payment of approximately $5,000 pursuant to the Data Fees.

38.     The Secretary did not provide any of the requested records to the Foundation on November 1, 2022.[1]

***The Foundation Notifies the Secretary She is Violating the NVRA***

39.     On November 4, 2022, the Foundation emailed to the Secretary the letter attached as Exhibit B ("Notice Letter").

---

[1] The Secretary's staff member explained that the office employee assigned to the Foundation's Request was no longer employed by the Secretary's office on November 1, 2022. For this reason, the Secretary's staff member did not address the non-SERVIS Data portion of the Request (Request Nos. 1-3) during the Foundation's visit.

40.     The Notice Letter notified the Secretary that she is violating the NVRA by failing to permit inspection and reproduction of voter list maintenance records in accordance with the NVRA's Public Disclosure Provision. Exhibit B at 1.

41.     The Notice Letter described the Foundation's attempt to obtain the Voter Roll on November 1, 2022. Exhibit B at 2-3.

42.     The Notice Letter also notified the Secretary that the requested list of eligible voters, *i.e.*, the Voter Roll, is a record within the NVRA's scope. Exhibit B at 2.

43.     The Notice Letter also notified the Secretary that "[i]t is also a violation of federal law to restrict or condition access to voter list maintenance records in a way that impedes Congress's objecti[ves]." Exhibit B at 3.

44.     Specifically, the Notice Letter explained, "The imposition of a $5,000 per-request fee is not 'reasonable,' as the NVRA requires, but is exorbitant and arbitrary." Exhibit B at 4.

45.     The Notice Letter continued, "New Mexico's $5,000 per-request fee precludes access to public records in a way that poses obstacles to the achievement of the NVRA's objections. The $5,000 per-request fee is therefore preempted and unenforceable." Exhibit B at 4.

46.     The Notice Letter also notified the Secretary that "[b]ecause the NVRA violation described herein has occurred and continues to occur within thirty (30) days of a federal election, the Foundation does not need to provide pre-litigation notice to the Secretary. 52 U.S.C. § 20510(b)(3). As a courtesy, Secretary Toulouse Oliver is receiving this letter with the hope that this dispute can be resolved without litigation. However, if the violation described herein is not cured by **close of business local time on November 7, 2022**, the Foundation will file an action to enforce the NVRA in the appropriate court." Exhibit B at 4.

*The Secretary Confirms the Imposition of the Unlawful Data Fees*

47.     On November 7, 2022, the Secretary's General Counsel emailed the Foundation the letter attached as Exhibit C.

48.     The November 7 letter provided the following response to the Foundation's Request:

1.  Our office maintains no responsive records.
2.  Our office maintains no responsive records.
3.  Please follow the link for the most current responsive records: https://www.sos.state.nm.us/voting-and-elections/data-and-maps/voter-registration-statistics/2022-voter-registration-data/
4.  As this is a voter data request, state law requires the SOS to obtain an affidavit and affirmation that the data will be used for governmental or election and election campaign purposes only and shall not be made available or used for unlawful purposes, from a requester before voter data is provided. *See* NMSA 1978, Section 1-4-5.5.

Exhibit C at 1.

49.     The November 7 letter continued, "Relating to your request for voter data in Number 4, our office has still not received a signed completed affidavit from you, and we therefore cannot provide these records." Exhibit C at 1.

50.     The letter continued further, "Our evaluation will also include which costs will be associated with the production of voter data, which we are happy to discuss once a proper request is made." Exhibit C at 1.

51.     On November 10, 2022, the Foundation responded to the Secretary with the letter attached as Exhibit D.

52.     The November 10 letter explained that the Secretary "remains in violation of the NVRA" because her office has not provided access to records response to Request No. 4, as required by the NVRA. Exhibit D at 1.

53.     Although the Foundation does not believe the NVRA required it to do so, the Foundation provided the completed "Voter Information Authorization," as the Secretary requested in her November 7 response. *See* Exhibit D at 2.

54.     The November 10 letter also expressed the Foundation's readiness to discuss the cost of record production "as soon as possible."  Exhibit D at 2.

55.     On November 17, 2022, the Secretary respond to the Foundation with the letter attached as Exhibit E.

56.     In the November 17 letter, the Secretary explains that the cost for the requested Voter Roll is $5,479.40. Exhibit E at 1.

57.     The Secretary also states that the Voter Roll is not a record subject to disclosure under the NVRA. Exhibit E at 1.

58.     The Secretary further states that the Foundation's request is "solely governed by the New Mexico Election Code." Exhibit E at 2.

59.     The Secretary further states that her office "can only provide you with the voter file after payment of the cost based on our fee structure in place." Exhibit E at 2.

***The Foundation's Intended Activities***

60.     The Foundation intends to use the requested Voter Roll for purposes intended by Congress and consistent with the NVRA's purposes. *See* 52 U.S.C. § 20501(b)(3)-(4).

61.     For example, the Foundation intends to review, study, and analyze the Voter Roll to determine whether lawful efforts are being made to keep voter registration records current and accurate and in accordance with federal and state law.

62.     The Foundation also intends to disseminate the results of its analyses in published reports, articles, blog and social media posts, and newsletters in order to advance the public education aspect of the Foundation's organizational mission.

63.     Without timely access to the Voter Roll, the Foundation cannot engage in its intended activities.

64.     The Foundation intends to request the Voter Roll or other similar SERVIS Data from the Secretary in the future in order to conduct the same or similar activities.

***Notice and Opportunity to Cure***

65.     Because the Secretary's NVRA violation occurred within 30 days of a federal election, the Foundation was not required to provide the Secretary notice before filing this civil action. 52 U.S.C. § 20510(b)(3).

66.     The Foundation provided the Secretary notice of her NVRA violation anyway with the hope that litigation could be avoided. *See* Exhibit B at 4.

67.     Although not necessary, the Foundation also waited 115 days after serving the Notice Letter to file this action.

68.     The Secretary has, to date, still not cured her NVRA violation.

69.     The Foundation will continue to be injured by the Secretary's violations of the NVRA unless and until the Defendant is enjoined from continuing to violate the law.

**COUNT I**
**Violation of Section 8(i) of the NVRA, 52 U.S.C. § 20507(i)**
**<u>Denial of Access</u>**

70.     The Foundation realleges the preceding paragraphs as if fully stated herein.

71.     The requested SERVIS Data are in the Secretary's possession, custody, and control.

72.     The Voter Roll is a public record under the NVRA's Public Disclosure Provision. 52 U.S.C. § 20507(i)(1). *See also Pub. Interest Legal Found. v. Matthews*, No. 20-cv-3190, 2022 U.S. Dist. LEXIS 40640, at *27 (C.D. Ill. Mar. 8, 2022); *Pub. Interest Legal Found., Inc. v. Bellows*, No. 1:20-cv-00061-GZS, 2022 U.S. Dist. LEXIS 38875, at *13-14 (D. Me. Mar. 4, 2022); *Judicial Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425, 446 (D. Md. 2019); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 723 (S.D. Miss. 2014); *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1341 (N.D. Ga. 2016) (NVRA requires disclosure of "records regarding the processes a state implements to ensure the accuracy and currency of voter rolls" as well as "individual applicant records."); *Bellitto v. Snipes*, No. 16-cv-61474, 2018 U.S. Dist. LEXIS 103617, at *13 (S.D. Fla. Mar. 30, 2018) ("[E]lection officials must provide full public access to all records related to their list maintenance activities, including their voter rolls.").

73.     The NVRA's Public Disclosure Provision authorizes and entitles the Foundation to inspect and receive the Voter Roll, with the only fees recognized as "photocopying at a reasonable cost," a cost not incurred when the records are transferred electronically, *e.g.*, through email or, as here, when storage media is provided by the recipient. *See* 52 U.S.C. § 20507(i)(1).

74.     The Secretary has not provided the Voter Roll to the Foundation.

75.     The Secretary will continue to deny the Foundation access to the Voter Roll unless the Foundation agrees to pay the full $5000+ fee, a fee not authorized by the NVRA.

76.     By conditioning the Foundation's federal right to inspect voter list maintenance records on the per-request payment of such fees, the Secretary functionally denies the Foundation access to the Voter Roll.

77.     The Secretary's decision to deny the Foundation access to the Voter Roll violates the NVRA.

78.     The Secretary's violation of the NVRA is causing the Foundation to suffer a

concrete informational injury because the Foundation does not have records and information to

which it is entitled under federal law. *FEC v. Akins*, 524 U.S. 11, 21 (1998) ("[A] plaintiff

suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly

disclosed pursuant to a statute").

79.     This informational injury is causing additional injuries. By denying the

Foundation access to the Voter Roll, the Secretary is impairing the Foundation's ability to assess

the accuracy of New Mexico's voter roll and the adequacy of the Secretary's voter list

maintenance program.

80.     The Secretary's violation of the NVRA is thus frustrating, impeding and harming

the efforts of the Foundation to carry out its organizational mission. *See, e.g.*, *supra* ¶ 3.

81.     The Foundation will continue to be injured by the Secretary's violations of the

NVRA unless and until the Secretary is enjoined from continuing to violate the law.

82.     For these reasons, the Foundation is a person aggrieved by a violation of the

NVRA, as set forth in 52 U.S.C. § 20510(b)(1).

**COUNT II**
**Violation of Section 8(i) of the NVRA, 52 U.S.C. § 20507(i)**
**Unlawful Costs – Conflict Preemption**

83.     The Foundation realleges the preceding paragraphs as if fully stated herein.

84.     The NVRA's Public Disclosure Provision permits states to charge requestors only

reasonable photocopying costs to obtain records within the NVRA's scope. 52 U.S.C. §

20507(i)(1).

85.     Pursuant to the Data Fees, the Secretary requires requestors to pay costs not

related to photocopying to obtain records within the NVRA's scope, even in electronic format.

13

86.     Pursuant to the Data Fees, the Secretary requires requestors to pay unreasonable costs to obtain records within the NVRA's scope, even in electronic format.

87.     Pursuant to the Data Fees, the Secretary imposes costs based on the number of records requested, even in electronic format.

88.     The Secretary's imposition of the Data Fees thus conflicts with the NVRA's plain text.

89.     For example, the Secretary's imposition of a $4.00 fee per 1000 records (or $5,479.40) to obtain the Voter Roll with voting history in electronic format, violates the NVRA because such a fee is neither reasonable nor related to photocopying.

90.     State laws that are in actual conflict with the NVRA are preempted and unenforceable to the extent of the conflict. *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 9 (2013).

91.     The Data Fees are thus preempted and unenforceable.

92.     By conditioning access to voter list maintenance records on a per-request payment of costs that Congress did not authorize, the Secretary is also imposing obstacles to the achievement of the NVRA's objectives—namely, "protect[ing] the integrity of the electoral process" and "ensur[ing] that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b).

93.     State law is preempted and unenforceable when it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995) (citations and quotations omitted); *see also Judicial Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425, 445 (D. Md. 2019).

94.     The Data Fees are thus preempted and unenforceable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for a judgment:

1.      Declaring that Defendant is in violation of Section 8(i) of the NVRA for refusing to allow the Foundation to inspect and copy the Voter Roll in electronic format.

2.      Declaring that Section 8(i) of the NVRA preempts and supersedes the Data Fees, and any other New Mexico statute, regulation, practice, or policy that conditions access to voter list maintenance records on payment of costs the NVRA does not authorize.

3.      Ordering Defendant to produce to the Foundation the Voter Roll in electronic format without first paying costs the NVRA does not authorize.

4.      Permanently enjoining Defendant from denying the Foundation's requests for the Voter Roll or other SERVIS Data in the future or conditioning access to the same on compliance with the Data Fees.

5.      Ordering the Defendant to pay the Foundation's reasonable attorney's fees, including litigation expenses and costs, pursuant to 52 U.S.C. § 20510(c); and,

6.      Granting the Foundation further relief that this Court deems just and proper.

Dated: February 27, 2023.                    For the Plaintiff Public Interest Legal Foundation:


   /s/ Noel H. Johnson
Noel H. Johnson* (Federal Bar ID 22-297)
Charlotte Davis** (Tennessee Bar No. 034204)
PUBLIC INTEREST LEGAL FOUNDATION, INC.
107 S. West Street, Suite 700
Alexandria, VA 22314
Tel. (703) 745-5870
Fax: (888) 815-5641
njohnson@PublicInterestLegal.org
cdavis@PublicInterestLegal.org
*Admitted to the USDC for New Mexico
**Application for admission forthcoming

*Attorneys for Plaintiff Public Interest Legal
Foundation*