**United States District Court**
**District of New Mexico**

| | |
|---|---|
| **PUBLIC INTEREST LEGAL FOUNDATION, INC.** | |
| *Plaintiff*, | |
| *v.* | |
| **MAGGIE TOULOUSE OLIVER,** in her official capacity as the Secretary of State for the State of New Mexico | Case No. 1:23-cv-00169-MLG-JFR |
| *Defendant*. | |

**Plaintiff Public Interest Legal Foundation's**
**Motion for Summary Judgment and Memorandum in Support**

**TABLE OF CONTENTS**

MOTION ............................................................................................................. 1

INTRODUCTION ............................................................................................... 1

UNDISPUTED MATERIAL FACTS ................................................................. 2

ARGUMENT ...................................................................................................... 5

    I.     Summary Judgment Standard ......................................................... 5

    II.    The Foundation Is Entitled Summary Judgment .............................. 6

        A.  The Foundation Requested the Voter File and
            the Secretary Has Not Produced It ............................................ 6

        B.  The Voter File Is Subject to Disclosure Under
            the NVRA's Plain Language ..................................................... 6

           1.  The Voter File "Concern[s]" the "Implementation of
               Programs and Activities Conducted for the Purpose of Ensuring the
               Accuracy and Currency of Official Lists of Eligible Voters[.]" ............ 8

               a.  The Voter File Reflects and Is the End Product of
                    New Mexico's Voter List Maintenance Activities ....................... 10

               b.  The Voter File Is a Compilation of Voter Registration Applications,
                    Which New Mexico Uses to Determine Eligibility ..................... 13

           2.  Disclosure of the Voter File Is Consistent with Congress's Intent ...... 14

        C.  The NVRA Preempts and Supersedes New Mexico's Data Fees ............. 15

           1.  The Data Fees Are Invalid Under the Field Preemption Doctrine ....... 17

               a.  Congress Intended to Occupy the Field of Public Voter
                    List Maintenance Documents ....................................... 17

                b.  The Data Fees Impermissibly Invade Congress's Field by
                    Imposing Costs Unrelated to Photocopying ................... 18

           2.  The Data Fees Are Invalid Under the Conflict
               Preemption Doctrine ................................................... 19

           3.  Even if States May Impose the Actual Cost of Producing
               Electronic Records, the Data Fees are Invalid Because They
               Exceed Such Costs and Are Unreasonable ............................ 22

CONCLUSION ................................................................................................... 23

## MOTION

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56, Plaintiff Public

Interest Legal Foundation ("Foundation") moves for summary judgment on its two-count

Complaint. (ECF No. 1.) There are no issues of material fact genuinely in dispute and the

Foundation is entitled to judgment as a matter of law.

## INTRODUCTION

Thirty years ago, Congress decided that decisions about who is and is not eligible to vote

should be transparent and publicly accessible. That decision is embodied in Section 8(i) of the

National Voter Registration Act of 1993 ("NVRA"), which mandates public disclosure of "**all**

**records** concerning the implementation of programs and activities conducted for the purpose of

ensuring the accuracy and currency of official lists of eligible voters[.]" 52 U.S.C. § 20507(i)(1)

(emphasis added) (the "Public Disclosure Provision").

As a threshold question, this case asks whether New Mexico's official list of eligible

voters ("Voter File") is a record subject to public disclosure under the NVRA. Like all other

courts confronting this issue, this Court should answer that question "yes," because that answer

is compelled by the NVRA's plain language and comports with Congress's intent. In simplest

terms, New Mexico's Voter File is the culmination and end product of New Mexico's voter list

maintenance activities. The Voter File thus squarely "concern[s]" those activities in every sense

of the word.

The remaining question for this Court is whether the NVRA preempts the fees New

Mexico charges for an electronic copy of the Voter File and other similar records ("Data Fees").

The answer to this question is also "yes." Congress authorized states to charge requestors for one

thing and one thing only— "photocopying at a reasonable cost." 52 U.S.C. § 20507(i)(1). Yet

New Mexico charges requestors more than $5,000 to receive an *electronic copy* of the Voter File, a fee that is neither related to photocopying nor reasonable. In fact, Defendant concedes that she does not know the basis for the Data Fees. *See* Statement of Undisputed Facts ¶ 9 ("SUF"). The Public Disclosure Provision's sweeping, yet specific language indicates that Congress intended to occupy the field for public disclosure of voter list maintenance records. The Data Fees invade this field and are therefore invalid and unenforceable under the "field preemption" doctrine.

New Mexico's Data Fees are also invalid under the "obstacle preemption" doctrine because they pose obstacles to Congress's objectives. Congress made all voter list maintenance records subject to public inspection so that the public can monitor the activities of the officials who decide who is and is not eligible to vote. In New Mexico, federal inspection rights are not available to the large segment of the population that cannot afford the $5,000, per-request price tag. By excluding those individuals from access to public records, New Mexico law undermines the NVRA's efficacy in a way that renders it invalid.

For these reasons, judgment should enter for the Foundation.

## UNDISPUTED MATERIAL FACTS

1.     New Mexico uses the State Elections Registration and Voting Integrity System or SERVIS to "maintain[] the official state voter file[.]" Churchwell Affidavit, Exhibit F at Interrogatory Response No. 6.

2.     The "SERVIS contains an entire universe of records and information related to every step of the election process from voter registration on the one end to the election results at the other." Churchwell Affidavit, Exhibit F at Interrogatory Response No. 7.

3.      The "SERVIS also complies with the federal Help America Vote Act of 2002 to facilitate voter registration and to provide a central database containing voter registration information for New Mexico[.]" Churchwell Affidavit, Exhibit F at Interrogatory Response No. 6.

4.      Under New Mexico law, the New Mexico Secretary of State ("Secretary") "shall furnish voter data, mailing labels or special voter lists" upon request. N.M. Stat. Ann. § 1-4-5.5(A).

5.      "The term "voter data" means "selected information derived from the voter file," N.M. Stat. Ann. § 1-4-5.5(E)(5).

6.      "Voter data," along with voting history, is maintained in the SERVIS. Churchwell Affidavit, Exhibit G at 19:21-23 (explaining that voting history is maintained in the SERVIS), 20:19-21:18 (explaining that name, residential address, mailing address, year of birth, electoral district, date of registration, date of changes or updates to registration record, and voter ID number are maintained in the SERVIS).

7.      The Secretary charges fees to receive "voter data" based on the following fee schedule:

| Type of Service or Document | Cost |
| --- | --- |
| Electronic Format | $4.00 per 1,000 records with voting history |
| Electronic Format | $3.00 per 1,000 records without voting history |
| Printed List | $5.00 per 1,000 records |
| Labels | $20.00 per 1000 records |

Voter Data Information, Fees for Data, https://www.sos.nm.gov/voting-and-elections/data-and-maps/voter-data-information/; *see also* Churchwell Affidavit, Exhibit F at Interrogatory Response No. 1.

3

8.      Under the Data Fees, requestors must pay $.004 per electronic "record" with voting history. *Id.*

9.      No current member of the Secretary's staff "has any knowledge of the basis upon which [the Data Fees] schedule was implemented." Churchwell Affidavit, Exhibit F at Interrogatory Response No. 1.

10.     Requests for "voter data" must be made using the "Voter Data Request Form," the most recent version of which is available at the following address: https://api.realfile.rtsclients.com/PublicFiles/ee3072ab0d43456cb15a51f7d82c77a2/96e0c1a0-8448-46a8-a3c7-e26ebe977f95/Voter%20Data%20Request%20Form.pdf (last accessed Jan. 3, 2024; *see also* N.M. Stat. Ann. § 1-4-5.5(C)-(D).

11.     On October 11, 2022, pursuant to the NVRA's Public Disclosure Provision, the Foundation requested from the Secretary "[a] copy of the most current listing of SERVIS data (active and inactive/suspense) in electronic form with voting history" (hereafter, the "Voter File"). Churchwell Affidavit ¶ 14.

12.     On November 1, 2022, a Foundation representative visited the Secretary's office to obtain the Voter File. Churchwell Affidavit ¶¶ 17-20.

13.     The Secretary's staff conditioned access to the Voter File on payment of approximately $5,000, pursuant to the Data Fees. Churchwell Affidavit ¶ 21.

14.     On November 4, 2022, prior to filing this action, the Foundation notified the Secretary in writing that her office is in violation of the NVRA for failure to permit inspection and duplication of records as required by the NVRA's Public Disclosure Provision. Churchwell Affidavit ¶¶ 23-29; Churchwell Affidavit, Exhibit G at 10:11-19 (acknowledging receipt of NVRA violation notice).

15.     At the request of the Secretary, the Foundation submitted a completed and signed Voter Data Request Form, repeating the Foundation's request for the Voter File. *See* Churchwell Affidavit ¶¶ 30-37; *see also* Churchwell Affidavit, Exhibit D.

16.     In a letter dated November 17, 2022, the Secretary stated that the Voter File is not subject to disclosure under the NVRA. *See* Churchwell Affidavit ¶¶ 38, 40; Churchwell Affidavit, Exhibit E at 1.

17.     In the same letter, the Secretary further stated that the cost for the requested Voter File is $5,479.40. *See* Churchwell Affidavit ¶ 39; Churchwell Affidavit Exhibit E at 1.

18.     In the same letter, the Secretary further stated that her office "can only provide you with the voter file after payment of the cost based on our fee structure in place." *See* Churchwell Affidavit ¶ 42; Churchwell Affidavit, Exhibit E at 2.

19.     To date, the Secretary has not provided the Voter File to the Foundation. *See* Churchwell Affidavit ¶ 43; Churchwell Affidavit, Exhibit F at Request for Admission No. 1.

## ARGUMENT

### I.     Summary Judgment Standard

"A district 'court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Walton v. Gomez (In re Estate of Booker)*, 745 F.3d 405, 411 (10th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). "In reviewing a summary judgment motion, the court is to view the record 'in the light most favorable to the nonmoving party.'" *L & M Enters. v. BEI Sensors & Sys. Co.*, 231 F.3d 1284, 1287 (10th Cir. 2000) (quoting *Thournir v. Meyer*, 909 F.2d 408, 409 (10th Cir. 1990)). "Unsupported conclusory allegations thus do not create a genuine issue of fact." *L & M Enters.*, 231 F.3d at 1287 (citation omitted).

II.     **The Foundation Is Entitled Summary Judgment.**

A.  **The Foundation Requested the Voter File and the Secretary Has Not Produced It.**

It is undisputed that prior to filing this action, the Foundation requested the Voter File—the statewide list of all eligible registrants in New Mexico. *See* Statement of Undisputed Facts ("SUF") ¶¶ 11-12, 13-14. It is undisputed that the Secretary is conditioning disclosure of the Voter File on payment of $5,479.40 (or $4.00 per 1,000 electronic records with voting history), SUF ¶¶ 16-18. It is undisputed that the Secretary has not produced the Voter File to the Foundation, SUF ¶ 19. The Secretary is thus denying the Foundation's ability to inspect or receive the Voter File. These facts are not genuinely in dispute.

B.  **The Voter File Is Subject to Disclosure Under the NVRA's Plain Language.**

The uniform weight of authority supports the Foundation's claim that the Voter File is a record "concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C 20507(i)(1).

To the Foundation's knowledge, every single court addressing this question has found the voter roll, or a portion thereof, to be within the NVRA's scope.[1] *See Pub. Interest Legal Found., Inc. v. Bellows*, No. 1:20-cv-00061-GZS, 2023 U.S. Dist. LEXIS 52315, at *9 (D. Me. Mar. 28, 2023) ("In evaluating Counts II and III, the Court determined that the Voter File falls within the ambit of the Public Disclosure Provision and is therefore subject to disclosure under the NVRA."); *Pub. Interest Legal Found. v. Matthews*, 589 F. Supp. 3d 932, 943-44 (C.D. Ill. 2022) ("Defendants acted in violation of the Public Disclosure Provision of the NVRA when

---

[1] An action is pending in this district that involves a claim under the NVRA for "voter data." *Voter Reference Foundation v. Torrez*, No. 1:22-cv-222-JB-KK (D. N.M., filed March 28, 2022.) That case also involves issues unrelated to the present case. To the Foundation's knowledge, the court has not ruled on the NVRA issue.

Defendants refused to make available for viewing and photocopying the full statewide voter registration list."); *Judicial Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425, 438-442, 446 (D. Md. 2019) (holding, under the NVRA, that plaintiff "is entitled to the voter registration list for [a] County that includes fields indicating name, home address, most recent voter activity, and active or inactive status"); *Judicial Watch, Inc. v. Lamone*, 455 F. Supp. 3d 209 (D. Md. 2020) (holding that plaintiff is entitled to date-of-birth information under NVRA); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 723 (S.D. Miss. 2014) ("[T]he Voter Roll is a 'record' and is the 'official list[] of eligible voters' under the NVRA Public Disclosure Provision."); *Bellitto v. Snipes*, No. 16-cv-61474, 2018 U.S. Dist. LEXIS 103617, at *13 (S.D. Fla. Mar. 30, 2018) ("[E]lection officials must provide full public access to all records related to their list maintenance activities, including their voter rolls."); *see also Ill. Conservative Union v. Illinois*, No. 20 C 5542, 2021 U.S. Dist. LEXIS 102543, at *15 (N.D. Ill. June 1, 2021) (holding, at the pleading stage, that statewide voter roll "falls within Section 8(i)'s disclosure provision").

The United States of America concurs. In the case of *Public Interest Legal Foundation v. Bellows*, No. 23-1361 (1st Cir.), the United States filed an *amicus curiae* brief urging the appellate court to affirm the lower court's holding that Maine's voter roll is within the NVRA's scope. Doc. 00118033423, *Public Interest Legal Foundation v. Bellows*, No. 23-1361 (1st Cir., filed July 25, 2023). It is United States's position that the NVRA's "[s]tatutory text, context, and purpose establish that Section 8(i) covers records concerning both voter registration and list-maintenance activities, including voter registration lists such as the Voter File." *Id.* at 14.

A plain meaning analysis supports these interpretations. "Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Gross v. FBL Fin. Servs.*, 557 U.S.

167, 175 (2009) (citations and quotations omitted). "It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004) (citations and quotations omitted); *See also Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992) ("When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'") (citations omitted). "Courts properly assume, absent sufficient indication to the contrary, that Congress intends the words in its enactments to carry their ordinary, contemporary, common meaning." *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993) (citations and quotations omitted).

1. **The Voter File "Concern[s]" the "Implementation of Programs and Activities Conducted for the Purpose of Ensuring the Accuracy and Currency of Official Lists of Eligible Voters[.]"**

In an opinion ultimately affirmed by the Fourth Circuit, the Eastern District of Virginia concluded that "a program or activity covered by the Public Disclosure Provision is one conducted to ensure that the state is keeping a 'most recent' and errorless account of which persons are qualified or entitled to vote within the state." *Project Vote/Voting for Am., Inc. v. Long*, 752 F. Supp. 2d 697, 706 (E.D. Va. 2010); *summary judgment granted by Project Vote/Voting for Am., Inc. v. Long*, 813 F. Supp. 2d 738 (E.D. Va. 2011), *affirmed by Project Vote / Voting for Am., Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012); *see also True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 719-20 (S.D. Miss. 2014*)* ("A list of voters is 'accurate' if it is 'free from error or defect' and it is 'current' if it is 'most recent.'") (citations omitted).

The record and relevant statutes establish that New Mexico conducts programs and activities for the purpose of keeping the New Mexico Voter File current and accurate. *See, e.g.*, Churchwell Affidavit, Exhibit G at 14:12-17. At a basic level, New Mexico has an obligation to

comply with the NVRA, which requires, the Secretary to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of … the death of the registrant." 52 U.S.C. § 20507(a)(4)(A); *see also* Churchwell Affidavit, Exhibit G at 13:20-23 (acknowledging familiarity with the Secretary's "duties and obligations under the National Voter Registration Act").

New Mexico's SERVIS is used to carry out New Mexico's list maintenance programs and activities. *See id*. at 38:1-6 (explaining that SERVIS is "certainly the system that's utilized to process these programs"); *id*. at 25:22-25 ("SERVIS is the statewide voter registration database, so it is the official record, and it is where all of the data is entered, maintained, updated for registered voters in New Mexico."); *id*. at 24:19-25:4 (affirming use of SERVIS to perform certain registration cancellations).

New Mexico conducts additional voter list maintenance activities pursuant to state law, including (1) creating new voter registration records for people who are not registered to vote. *See, e.g.*, N.M. Stat. Ann. § 1-4-8(C)(1) ("between the deadline to register to vote or update an existing voter registration through the day of the election, the county clerk shall process all: (1) new voter registrations that meet the requirements of this section;"); *see also* Churchwell Affidavit, Exhibit G at 17:12-18:13 (describing process for adding and updating voter registration records), and (2) making changes and updates to voter record information stored in the SERVIS. *See* Churchwell Affidavit, Exhibit G at 19:9-11 ("Q. So SERVIS is used to update existing voter registrations, correct? A. Yes.").

New Mexico law further requires the Secretary to "conduct a general program that identifies voters who may no longer reside at their address of registration," and remove registrants "who are ineligible to vote due to change of residence." N.M. Stat. Ann. § 1-4-28(A)-

9

(B); *see also* Churchwell Affidavit, Exhibit G at 20:1-18 (describing process for change-of-residency cancellations). Election officials will also cancel a registration record when the registrant dies, N.M. Stat. Ann. § 1-4-24(A); *see also* Churchwell Affidavit, Exhibit G at 16:7-13, and when a registrant requests cancellation, N.M. Stat. Ann. § 1-4-24(B); *see also* Churchwell Affidavit, Exhibit G at 16:7-13.

The Secretary's Rule 30(b)(6) designee stated in deposition that "additions, deletions, or changes to the [V]oter [F]ile are part of the Secretary's program to keep their voter file list maintained and accurate[.]" Churchwell Affidavit, Exhibit G at 37:21-24. Each of New Mexico's activities described above is thus a "program" or "activity" within the purview of the NVRA because it is conducted to make sure New Mexico's registration records and eligible voter list are "errorless" and contain the "most recent" information for each registrant. There is no compelling argument to the contrary.

The remaining question for the Court is whether the Voter File "concern[s]" New Mexico's voter list maintenance programs and activities. 52 U.S.C. § 20507(i)(1). The common and ordinary meaning of the word "concern" is "to relate to." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/concerns?src=search-dict-hed (last accessed Jan. 4, 2024). The Voter File plainly relates to New Mexico's voter list maintenance activities in at least two ways.

### a.  The Voter File Reflects and Is the End Product of New Mexico's Voter List Maintenance Activities.

The SERVIS, and the Voter File specifically, contains information about each eligible registrant, including name, addresses, and year of birth. *See* N.M. Stat. Ann. § 1-4-5.5(E); *see also* Churchwell Affidavit, Exhibit G at 20:19-21:18 (describing registrant data maintained in the SERVIS). As described previously, the SERVIS is used to implement the activities New Mexico

conducts to keep voter data current and accurate. In fact, the Secretary's Rule 30(b)(6) designee confirmed that "the voter list is the most accurate list of voters in the state of New Mexico[.]" Churchwell Affidavit, Exhibit G at 41:21-23.

In her Rule 30(b)(6) deposition, the Secretary's designee also agreed that the SERVIS system—where the Voter File is derived from—is the end product of New Mexico's voter list maintenance activities:

16 Q. Would it be accurate to say that the SERVIS

17 system is kind of like the end product of all of the

18 addition of new registrations, cancelation of a

19 registration, or removal of a registration? It's all

20 evidenced by SERVIS through the voter file?

21 MR. ALLEN: Object to form.

22 **A. I think that's fair. SERVIS is the statewide**

23 **voter registration database, so it is the official**

24 **record, and it is where all of the data is entered,**

25 **maintained, updated for registered voters in New Mexico.**

Churchwell Affidavit, Exhibit G at 25:16-25 (bold in original). Put differently, a straight line can be drawn between New Mexico's registration activities (the start) and the Voter File (the finish). Because it is the "end product" of voter list maintenance activities, the Voter File plainly "concerns"—or relates to—those activities and the Voter File is therefore within the NVRA's scope.

*Pub. Interest Legal Found. v. Bellows* accords. There, the Foundation filed an action to compel disclosure of Maine's Voter File under the NVRA. In an order denying the Secretary of

State's motion to dismiss, the Court explained that "the Voter File is a "record[] concerning the implementation of" such a "program[] and activit[y]" because it *represents the end result* of the entry of voter registration applications, as described above. 52 U.S.C. § 20507(i)(1); see Project Vote, 682 F.3d at 335-36." *Pub. Interest Legal Found., Inc. v. Bellows*, 588 F. Supp. 3d 124, 133 (D. Me. 2022). (emphasis added). In other words, the Voter File's reflection of *only* the entry of voter registration applications was enough to place the Voter File within the NVRA's scope. The record here—including the deposition testimony cited above—establishes that the Voter File reflects additions as well as cancellations.[2]

Pub. Interest Legal Found. v. Matthews, 589 F. Supp. 3d 932, 941 (C.D. Ill. 2022) lends further support to this rationale. In that case, Defendants "argue[d] that the words 'all records' are qualified only by the descriptive phrase 'concerning the implementation of programs and activities.' That descriptive phrase, Defendants' argument goes, means that the NVRA only mandates the public disclosure of data or programs designed to maintain the statewide voter registration list." *Matthews*, 589 F. Supp. 3d at 940. The Court disagreed.

> [T]hat argument puts an unbalanced emphasis on the phrases "concerning the implementation of programs and activities" and "for the purpose of ensuring the accuracy and currency of the official list of eligible voters." On balance, the two phrases, when read together, make clear that any record, be it data regarding maintenance activities, the processes involved in the maintenance activities, or the output of those maintenance activities, including the statewide voter registration list, must be made available to the public. Indeed, it would not make sense if the list, as the result of the maintenance activities, could not be viewed if the purpose of viewing the activities is to ensure the output is correct.

*Matthews*, 589 F. Supp. 3d at 940-41 (emphasis added).

---

[2] Maine's Voter File also reflected updates and cancellation activity. Yet the Court mentioned only applications in its decision.

New Mexico's Voter File is similarly "the output" of New Mexico's voter list maintenance activities and therefore subject to disclosure under the NVRA's plain meaning. *See id*. at 941 ("When every word and phrase in the Public Disclosure Provision is given equal weight, 'all records' must include the statewide voter registration list.").

> **b.  The Voter File Is a Compilation of Voter Registration Applications, Which New Mexico Uses to Determine Eligibility.**

The court in *Pub. Interest Legal Found. v. Bellows* reasoned, "The Voter File is a compilation of voter registration applications," and "[w]hen a state registrar reviews voter applications and enters information from those applications into the 'central voter registration system' from which the Voter File is produced, she engages in a 'program' or 'activity' within the meaning of the NVRA's Public Disclosure Provision. *Bellows*, 588 F. Supp. 3d at 133 (citations omitted).

Similarly, in *Judicial Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425 (D. Md. 2019), the court granted the plaintiffs summary judgment, holding that a list of Maryland's registered voters is a "record" covered by the NVRA's Public Disclosure Provision. *Judicial Watch*, 399 F. Supp. 3d at 439. Because "a voter list is simply a pared down compilation of voter registrations," *id*. at 440, the court reasoned, it is likewise a "record" covered by the NVRA's Public Disclosure Provision, *id*. at 440-442.

New Mexico's Voter File is likewise a "compilation of voter registrations." *Id*. at 440. The Voter File is generated from the voter data stored in the SERVIS, the information that election officials endeavor to keep accurate and current and "on which [New Mexico] election officials rely to monitor, track, and determine voter eligibility." *Judicial Watch*, 399 F. Supp. 3d at 439. The Voter File is thus a record covered by the NVRA.

13

*True the Vote v. Hosemann*, 43 F. Supp. 3d 693 (S.D. Miss. 2014) also supports the

Foundation. In that case, the plaintiff sought a "a complete list of all Mississippi voters [in]

all status categories" *Id*. The court observed,

> Mississippi has an electronic election recordkeeping system, SEMS, that contains
> its Voter Roll information. The Voter Roll is created from data in SEMS and is
> maintained by the State. Counties receive voter registration applications from
> individual registrants and must scan the applications and other pertinent registration
> documentation into SEMS.
>
> …
>
> The Court likewise concludes that the Voter Roll is a "record" and is the "official
> list[] of eligible voters" under the NVRA Public Disclosure Provision. The process
> of compiling, maintaining, and reviewing the voter roll is a program or activity
> performed by Mississippi election officials that ensures the official roll is properly
> maintained to be accurate and current.

*Id*.

New Mexico also has an electronic election record keeping system—the SERVIS. The

Voter File is generated from information stored in the SERVIS, including names and addresses,

and is New Mexico's "most accurate list of voters in the state of New Mexico." *See* Churchwell

Affidavit, Exhibit G at 41:21-23. "The process of compiling, maintaining, and reviewing" the

Voter File is an activity performed by New Mexico election officials "that ensures the official

roll is properly maintained to be accurate and current." *True the Vote*, 43 F. Supp. 3d at 723. The

Voter File is a "record" of that activity and therefore within the NVRA's broad scope.

### 2. Disclosure of the Voter File Is Consistent with Congress's Intent.

The Foundation's interpretation is not only textual correct, but also consistent with

Congressional intent. The NVRA was enacted for four express purposes, including "to protect

the integrity of the electoral process" and "to ensure that accurate and current voter registration

rolls are maintained." 52 U.S.C. § 20501(b)(3)-(4). The NVRA's Public Disclosure Provision

reflects Congressional intent by allowing the public to monitor the activities of government as they concern the right to vote. In the words of the Fourth Circuit,

> It is self-evident that disclosure will assist the identification of both error and fraud in the preparation and maintenance of voter rolls. State officials labor under a duty of accountability to the public in ensuring that voter lists include eligible voters and exclude ineligible ones in the most accurate manner possible. Without such transparency, public confidence in the essential workings of democracy will suffer.

*Project Vote*, 682 F.3d at 339.

The Southern District of Florida accords: "To ensure that election officials are fulfilling their list maintenance duties, the NVRA contains public inspection provisions." *Bellitto v. Snipes*, No. 16-cv-61474, 2018 U.S. Dist. LEXIS 103617, at *12 (S.D. Fla. Mar. 30, 2018) (citing 52 U.S.C. § 20507(i)). The Public Disclosure Provision "convey[s] Congress's intention that the public should be monitoring the state of the voter rolls and the adequacy of election officials' list maintenance programs." *Id*. at *12-13. The Southern District of Mississippi also accords: "The Public Disclosure Provision thus helps "to ensure that accurate and current voter registration rolls are maintained.'" *True the Vote*, 43 F. Supp. 3d at 721 (citations omitted).

Congress made all list maintenance records subject to public inspection precisely so that the public can enjoy a transparent election process and assess compliance with federal and state laws that grant and remove voting rights. "Public disclosure promotes transparency in the voting process, and courts should be loath to reject a legislative effort so germane to the integrity of federal elections." *Project Vote*, 682 F.3d at 339-40.

### C.  The NVRA Preempts and Supersedes New Mexico's Data Fees.

New Mexico charges requestors $4.00 per 1,000 electronic records with voting history, or $5,479.40 to receive the statewide Voter File. These Data Fees contravene the NVRA's plain text and stand as an obstacle to the NVRA's purposes. The Data Fees are therefore superseded

and unenforceable under Article VI, Clause 2 of the United States Constitution (the Supremacy Clause), Article I, Section 4, Clause I of the United States Constitution (the Elections Clause), and the Supreme Court's decision in *Arizona v. Inter Tribal Council of Arizona*, 570 U.S. 1 (2013) ("*Inter Tribal*").

  In the words of the Supreme Court, the NVRA is a "a complex superstructure of federal regulation atop state voter-registration systems." *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 5 (2013) ("*Inter Tribal*"). The multi-layered system in which the NVRA operates is permitted by the Constitution's Elections Clause. U.S. Const. Art. I, § 4, cl. 1. Upon the States, the Elections Clause "imposes the duty ('*shall* be prescribed'), to prescribe the time, place, and manner of electing Representatives and Senators; upon Congress it confers the power to alter those regulations or supplant them altogether." *Inter Tribal*, 570 U.S. at 8. The Elections "Clause's substantive scope is broad," and includes "regulations relating to 'registration.'" *Id*. at8-9. Under the Elections Clause, there is no presumption against preemption. *Id*. at 14. Instead, Elections Clause legislation—like the NVRA—must be read "simply to mean what is says." *Id*. at 15. "The power of Congress over the 'Times, Places and Manner' of congressional elections 'is paramount, and may be exercised at any time, and to any extent which it deems expedient; and so far as it is exercised, and no farther, the regulations effected supersede those of the State which are inconsistent therewith.'" *Inter Tribal*, 570 U.S. at 9 (*quoting Ex parte Siebold*, 100 U.S. 371, 392 (1880)). In *Inter Tribal*, the Supreme Court held that the NVRA is superior to any conflicting state laws. In such situations, "the state law, 'so far as the conflict extends, ceases to be operative.'" *Inter Tribal*, 570 U.S. at 9 (quoting *Ex parte Siebold*, 100 U. S. at 384).

  "Federal pre-emption of state law may be either express or implied." *Emerson v. Kan. City S. Ry. Co.*, 503 F.3d 1126, 1129 (10th Cir. 2007) (citations omitted). There are two types of

implied preemption: (1) "field preemption, where federal regulation is so persuasive that it suggests that Congress left no room for supplementation by the states," and (2) "conflict preemption, where it would be impossible to comply with both federal and state regulations or where the state law is an obstacle to the purpose and objective of the federal law." *Quimbey v. Cmty. Health Sys. Prof'l Servs. Corp.*, 222 F. Supp. 3d 1038, 1043 (D.N.M. 2016). The Data fees are invalid under both types of implied preemption.

### 1.   The Data Fees Are Invalid Under the Field Preemption Doctrine.

#### a.   Congress Intended to Occupy the Field of Public Voter List Maintenance Documents.

Because "the purpose of Congress is the ultimate touch-stone in every pre-emption case," *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (citations and quotations omitted), the Court must first consider the NVRA's purpose with respect to permissible costs. "To discern Congress' intent [the Court] examine[s] the explicit statutory language and the structure and purpose of the statute." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990).

The NVRA's Public Disclosure Provision provides,

> Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, **photocopying at a reasonable cost**, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

52 U.S.C. § 20507(i)(1) (emphasis added). Congress thus expressly addressed the cost of public records in the text itself, limiting those costs to "photocopying" charges, which must also be "reasonable."

What the NVRA does *not* say is also important. Unlike other federal statutes, like the Freedom of Information Act, *see* 5 U.S.C. § 552(a)(4)(A)(i), the NVRA has no express language

permitting a state agency to charge the requestor the costs of producing the requested records. The United States District Court for the Norther District of Georgia has explained that "[t]he absence of a cost provision in the public inspection provision of the NVRA—and its inclusion in other record disclosure laws—suggests Congress intended States to shoulder the burden" of producing records. *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1351 (N.D. Ga. 2016).

Considering both what Congress said and did not say in the relevant text, it is reasonable and logical to infer that Congress intended to occupy the narrow, yet expansive field of public voter list maintenance records.

### b.  The Data Fees Impermissibly Invade Congress's Field by Imposing Costs Unrelated to Photocopying.

"[S]tate law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively." *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990). The Data Fees do exactly that by imposing costs on requestors that are unrelated to photocopying. The Secretary concedes this. *See* Churchwell Affidavit, Exhibit F at Request for Admission No. 3 (admitting that "the SERVIS Data Fees are not exclusively associated with the cost of photocopying the Voter File"). The Secretary's Rule 30(b)(6) designee explains that the Data Fees include the cost of photocopying only when production requires creation of "hard copy." *See* Churchwell Affidavit, Exhibit G at 26:21-27:2. The Foundation requested electronic copies so the creation of a "hard copy" is not necessary. The Secretary's designee prudently conceded that no photocopying is necessary to fulfill the Foundation's request. Churchwell Affidavit, Exhibit G at 42:23-43:2 ("Q. So the request from the Public Interest Legal Foundation was for an electronic copy of the voter list file. That would not be subject to any photocopying charges; would that be correct? A. There would not be any photocopying.").

The Secretary does not know the basis for the Data Fees. *See* Churchwell Affidavit, Exhibit F at Interrogatory Response No. 1. What is clear, though, is that the basis exceeds the photocopying charges. The Data Fees are therefore preempted and unenforceable.

### 2.   The Data Fees Are Invalid Under the Conflict Preemption Doctrine.

The Data Fees are also invalid under the conflict preemption doctrine. "Conflict preemption" occurs where "the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 377 (2015) (citations and quotations omitted). Congress included its purposes and objectives in the NVRA's text:

(1) to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office;

(2) to make it possible for Federal, State, and local governments to implement this chapter in a manner that enhances the participation of eligible citizens as voters in elections for Federal office;

(3) to protect the integrity of the electoral process; and

(4) to ensure that accurate and current voter registration rolls are maintained.

52 U.S.C. § 20501(b)(1)-(4).

To help accomplish the NVRA's objectives, Congress required each state to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters" due to death or relocation. 52 U.S.C. § 20507(a)(4). Congress also envisioned that states could permit removal for other reasons, such as felony convictions. 52 U.S.C. § 20507(a)(3)(B). Congress also provided a sweeping oversight mechanism, which gives the public the right to inspect "all" voter list maintenance records. 52 U.S.C. 20507(i)(1). As noted before, the Public Disclosure Provision does not promote transparency for the mere sake of transparency. Rather, it is a means to accomplish the NVRA's objectives—namely, accurate voter rolls and election integrity. 52 U.S.C. § 20501(b)(3)-(4).

19

The Fourth Circuit prudently observed that the Public Disclosure Provision "embodies Congress's conviction that Americans who are eligible under law to vote have every right to exercise their franchise, a right that must not be sacrificed to administrative chicanery, oversights, or inefficiencies." *Project Vote*, 682 F.3d at 334-35. The court recognized further that "[i]t is self-evident that disclosure will assist the identification of both error and fraud in the preparation and maintenance of voter rolls." *Id*. at 339. In other words, Congress made voter list maintenance transparent so errors would be found and corrected. Congress also intended for the public to "monitor" the voter rolls and evaluate officials' compliance with state and federal law. *Bellitto*, 2018 U.S. Dist. LEXIS 103617, at *12-13.

The right to inspect voter list maintenance records is not available to everyone in New Mexico. It is available only to those who can afford to pay more than $5,000 *every time they request the Voter File*. It is self-evident that a $5,000 per-request cost stands as an obstacle to Congress's transparency and oversight goals as such a cost effectively forecloses access to a large portion of the public. Indeed, according to the U.S. Census Bureau, the median household income in New Mexico in 2022 is $58,722.[3] At that rate, a *single purchase* of the Voter File would devour nearly ten percent of a household's yearly income. Foreclosing access limits the number of people and organizations that will monitor the Secretary's voter list maintenance programs. Fewer errors will be found. Fewer errors will be corrected.

*Judicial Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425 (D. Md. 2019) is instructive. There, the court held that the NVRA's Public Disclosure Provision preempts a Maryland law that required an applicant requesting a voter registration list to be a Maryland registered voter. 399 F.

---

[3] U.S. Census Bureau, Quick Facts, New Mexico, available at https://www.census.gov/quickfacts/fact/table/NM/PST045222 (last accessed Jan. 4, 2024).

Supp. 3d at 443- 445. The court found that limiting access to Maryland voters "is an obstacle to the accomplishment of the NVRA's purposes"—namely, "protect[ing] the integrity of the electoral process," and "ensur[ing] that accurate and current voter registration rolls are maintained." *Judicial Watch*, 399 F. Supp. 3d at 445 (citing 52 U.S.C. § 20501(b)(3)-(4)). The court specifically recognized that "Section 8(i) of the NVRA provides for the disclosure of voter registrations in order to 'assist the identification of both error and fraud in the preparation and maintenance of voter rolls.'" *Id*. (quoting *Project Vote*, 682 F.3d at 339). By limiting disclosure to Maryland voters, Maryland law "exclude[ed] organizations and citizens of other states from identifying error and fraud," contrary to the NVRA's purposes. *Id*. The court continued, "By excluding these organizations from access to voter registration lists, the State law undermines Section 8(i)'s efficacy." *Id*. "It follows that the State law is preempted in so far as it allows only Maryland registered voters to access voter registration lists." *Id*. By excluding those who cannot afford to pay the exorbitant Data Fees from access to the Voter Roll, New Mexico law likewise "undermines Section 8(i)'s efficacy." *Id*.

Courts have regularly invalidated state laws where those laws conflict with the NVRA. *See Project Vote*, 813 F. Supp. 2d at 743 ("[T]o the extent that any Virginia law, rule, or regulation forecloses disclosure of completed voter registration applications with the voters' SSNs redacted, the court FINDS that it is preempted by the NVRA."); *see also Pub. Interest Legal Found., Inc. v. Bellows*, No. 1:20-cv-00061-GZS, 2023 U.S. Dist. LEXIS 52315, at *20 (D. Me. Mar. 28, 2023) ("Thus, the Court cannot ignore the plain language of the NVRA and Congress's purposes to safeguard Exception J and its privacy protections. In sum, the Court concludes that the NVRA preempts Exception J."); *Pub. Interest Legal Found. v. Matthews*, 589 F. Supp. 3d 932, 944 (C.D. Ill. 2022) ("The Foundation has also shown that Section 5/1A-25

conflicts with, and is preempted by, the Public Disclosure provision insofar as Section 5/1A-25 prohibits the photocopying and duplication of the same list."); *ACORN v. Edgar*, 880 F. Supp. 1215, 1222 (N.D. Ill. 1995) ("this Court therefore: … declares that all provisions of Illinois law or regulations that conflict with the [NVRA] are pre-empted by the [NVRA]"); *Pub. Interest Legal Found., Inc. v. Dahlstrom*, No. 1:22-cv-00001-SLG, 2023 U.S. Dist. LEXIS 86783, at *22 (D. Alaska May 17, 2023) ("The Foundation has made a plausible claim that State law may be preempted by the NVRA, but the parties have provided only limited briefing on this issue."). Invalidation of the Data Fees is warranted here.

**3.    Even if States May Impose the Actual Cost of Producing Electronic Records, the Data Fees are Invalid Because They Exceed Such Costs and Are Unreasonable.**

In *Greater Birmingham Ministries v. Merrill*, No. 2:22cv205-MHT, 2022 U.S. Dist. LEXIS 181339 (M.D. Ala. Oct. 4, 2022),[4] the court considered to what extent the NVRA permits states to charge requestors for production of electronic records. While the court declined to order the Alabama Secretary of State to provide the records for free, the court held, "To ensure that the purposes of the NVRA are not frustrated, however, whatever schedule he develops for reasonable costs must be tethered to the actual costs he incurs in producing responsive voter records." *Id*. at *18. The court held further, "To the extent that Alabama law provides otherwise … it is preempted by the NVRA." *Id*. at *18-19.

The NVRA's text does not support the application of an "actual cost" standard. But, even if such a standard were applied here, the Data Fees would fail it. The Secretary concedes that the Data Fees "are not exclusively associated with the electronic transmission of the Voter File to

---

[4] On appeal at *Greater Birmingham Ministries v. Secretary of State for the State of Alabama*, No. 22-13708 (11th Cir.).

Plaintiff," Churchwell Affidavit, Exhibit F at Request for Admission No. 4, indicating that the Data Fees exceed the actual cost of producing electronic records. More fundamentally, the Secretary has no idea why she charges what she charges, which effectively precludes her from ever showing that the Data Fees are "tethered to the actual cost" of production.[5] Last, even if the Secretary could get past these first two hurdles, she would still fail because the Data Fees are not reasonable. A requestor must pay more than $5,000 *each time* she requests an *electronic copy* of the Voter File with voting history. Such an exorbitant, per-request cost is not reasonable given its deleterious effects on the NVRA's efficacy, as described *supra*. Under any standard, the Data Fees stand as obstacles to Congress's objectives, and they are therefore preempted and unenforceable.

## CONCLUSION

The Voter File is a record subject to the disclosure under the NVRA's plain language. By conditioning access to the Voter File on payment of costs not authorized by Congress, the Secretary is violating the NVRA. For the foregoing reasons, the Court should enter judgment for the Foundation and order production of the Voter File in accordance with the NVRA.

---

[5] In her written discovery responses, the Secretary estimates that the *maximum* amount of time needed to response to a request for the Voter File is 4 hours and 50 minutes, *see* Churchwell Affidavit, Exhibit F at Response to Interrogatory No. 3, although some of this time is spent simply "awaiting the system" and "just making sure the system is still running," Churchwell Affidavit, Exhibit G at 33:3-4, 17-18. At the maximum production time, the Secretary is charging requestors more than $1,100 per hour in personnel costs to receive one copy of the Voter File in electronic format ($5,479.40/4.833 = $1,133.74). Even if the NVRA permitted states to pass personnel costs on to the public—which it does not—such a rate is patently unreasonable.

Dated: January 5, 2024.

Respectfully submitted,

   /s/ Noel H. Johnson        
Noel H. Johnson* (Federal Bar ID 22-297)
Maureen Riordan* (NY Bar No. 2058840)
PUBLIC INTEREST LEGAL FOUNDATION, INC.
107 S. West Street, Suite 700
Alexandria, VA 22314
Tel. (703) 745-5870
njohnson@PublicInterestLegal.org
mriordan@PublicInterestLegal.org
*Admitted to the USDC for New Mexico
** Admitted pro hac vice
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on January 5, 2024, I electronically filed the foregoing using the

Court's ECF system, which will serve notice on all parties.


      /s/ Noel H. Johnson
      Noel H. Johnson
      njohnson@publicinterestlegal.org
      *Counsel for Plaintiff*